# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **WENDELL HARRIS, Administrator of Estate of LaFerre Washington Harris, Deceased, and on behalf of LaFerre Washington Harris,** ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 2:19-cv-02397-JTF-jay |
| **MIDTOWN CENTER FOR HEALTH AND REHABILITATION, LLC d/b/a MIDTOWN CENTER FOR HEALTH AND REHABILITATION; MC CONSULTING, LLC,** ) ) ) ) ) ) | |
| **Defendants.** ) | |

## ORDER ADOPTING IN PART AND REJECTING IN PART AMENDED REPORT AND RECOMMENDATION AND DENYING DEFENDANT MIDTOWN CENTRAL FOR HEALTH AND REHABILITATION, LLC'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY LAWSUIT

Before the Court is Defendant Midtown Center for Health and Rehabilitation, LLC's Renewed Motion to Compel Arbitration and Stay Lawsuit, filed on March 27, 2020. (ECF No. 63.) Plaintiff Wendell Harris filed a Response in Opposition on April 10, 2020. (ECF No. 67.) On April 17, 2020, Defendant Midtown Center for Health and Rehabilitation, LLC ("Defendant Midtown") filed its Reply. (ECF No. 68.) Pursuant to the Court's Order of Reference (ECF No. 82), the Magistrate Judge entered an Amended Report and Recommendation on Defendant's Renewed Motion to Compel Arbitration on March 19, 2021.[1] (ECF No. 113.) Plaintiff Wendell

---

[1] On December 22, 2020, the Magistrate Judge entered a Report and Recommendation to deny Defendant Midtown's Motion to Compel without prejudice. (ECF No. 88.)

1

Harris filed Objections to the Amended Report and Recommendation on April 2, 2021.[2] (ECF No. 114.) On April 16, 2021, Defendant Midtown filed a Response to Plaintiff's Objections. (ECF No. 119.) For the reasons provided below, the Court **ADOPTS** in part and **REJECTS** in part the Amended Report and Recommendation and **DENIES** Defendant Midtown's Renewed Motion to Compel Arbitration and Stay Lawsuit.

## FACTUAL FINDINGS

In the Report and Recommendation, the Magistrate Judge provides, and this Court adopts and incorporates, proposed findings of fact in this case. (ECF No. 113, 1–2.)

## LEGAL STANDARD

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Upon hearing a pending matter, "the magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2).

The district court reviews a magistrate judge's proposed findings and recommendation. The standard of review that is applied depends on the nature of the matter considered by the

---

[2] On May 7, 2021, Plaintiff filed Supplemental Objections to the Amended Report and Recommendation. (ECF No. 125.) These objections are untimely and will not be considered by the Court. *See* LR 72.1(g)(2).

magistrate judge.³  *See Baker*, 67 F. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures.  A district court must review dispositive motions under the *de novo* standard.").  Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge.  *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1).  The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions."  *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015).  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory committee notes.

The Court notes that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  Furthermore, "[f]ailure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection to the entire" report and recommendation.  *McCready v. Kamminga*, 113 F. App'x 47, 49 (6th Cir. 2004).  In turn, "[a] general objection is considered the equivalent of failing

---

³ While this issue was not raised by the Parties, the Court proceeds under the assumption that a motion to compel arbitration is a dispositive motion warranting *de novo* review.  Other courts in this Circuit have concluded that a motion to compel arbitration is a dispositive motion.  *See Brown v. Quince Nursing & Rehab. Ctr., LLC*, No. 2:18-cv-2740, 2020 U.S. Dist. LEXIS 144761, at *7 (W.D. Tenn. Aug. 12, 2020); *Curatola v. TitleMax of Tenn., Inc.*, No. 1:16-cv-01263-JDB-egb, 2018 U.S. Dist. LEXIS 94824, at *9–10 (W.D. Tenn. June 6, 2018) (construing a motion to compel arbitration as a motion for injunctive relief); *Patteson v. McAdams Tax Advisory Grp., LLC*, No. 09-2085 Ma/P, 2010 U.S. Dist. LEXIS 16992, at *1 n.1 (W.D. Tenn. Feb. 14, 2010) (submitting a report and recommendation on a motion to compel arbitration "[o]ut of an abundance of caution"); *Costello v. Patterson Dental Supply, Inc.*, No. 5:06-CV-213, 2007 U.S. Dist. LEXIS 85654, at *9 (W.D. Mich. Nov. 20, 2007) (finding motion to compel arbitration as dispositive under the "functional equivalency test").

to object entirely." *Id.* A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Brown*, 47 F. Supp. 3d at 674.

## ANALYSIS

The Magistrate Judge found that the arbitration agreement was valid because (1) Midtown was a party to the agreement as an assignee, (2) Plaintiff waived its argument that Decedent was incompetent, (3) Mavis Harris had express actual authority to execute the arbitration agreement, and (4) Mavis Harris signed the arbitration agreement. (ECF No. 113, 6, 10, 14–15.) Additionally, the Magistrate Judge found that the arbitration agreement was enforceable because it was not unconscionable. (*Id.* at 21.) Accordingly, the Magistrate Judge recommended that Defendant Midtown's Motion to Compel Arbitration be granted and that this action be stayed pending resolution of the arbitration. (*Id.* at 22.)

The Magistrate Judge noted that Plaintiff does not contest the arbitration agreement's applicability to the underlying dispute if the arbitration agreement is indeed valid and enforceable. (*Id.* at 3–4.) Plaintiff objects only to (1) the Magistrate Judge's finding that Mavis Harris possessed express actual authority to execute the arbitration agreement; and (2) the Magistrate Judge's finding that LaFerre Harris ("Decedent") possessed mental capacity to give Mavis Harris authority as his agent. (ECF No. 114.) While this Court agrees that Decedent was competent, the Court disagrees that the evidence supports a finding that Mavis Harris had express actual authority to execute the arbitration agreement.

### I. Mental Capacity

Plaintiff objects to the Amended Report and Recommendation's finding that Decedent possessed mental capacity to bestow authority upon Mavis Harris. (ECF No. 114, 5.) Plaintiff first objects to the Magistrate Judge's reliance on his own deposition testimony and that of LaVon

4

Harris because they are not medical experts or appropriate evaluators of Decedent's mental capacity.  (*Id.* at 5–6.)  One asserting another's incapacity "must prove either '(1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) they are unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of their condition.'"  *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 501 (Tenn. Ct. App. 2008) (quoting *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001)).  The Court disagrees with Plaintiff on this point.  The testimony considered by the Magistrate Judge was largely free of legal conclusions and was descriptive of how Decedent functioned and interacted with others.  (*See* ECF No. 113, 10 n.5.)  This information is clearly relevant to a competency inquiry.  Additionally, Defendant points out that a person is presumed competent; and if a party challenges such, proof of incompetence at the time of the underlying event or action must be presented.  (ECF No. 119, 7) (citing *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 501 (Tenn. Ct. App. 2008)).  In light of this presumption and the deposition testimony regarding Decedent's interaction with others, upon *de novo* review, the Court finds that the Magistrate Judge's analysis regarding mental capacity is sound and reasoned.  Thus, after reviewing the record, the Court finds that the Magistrate Judge correctly concluded that Plaintiff failed to show that Decedent was incompetent, and  Plaintiff's objection to the Magistrate Judge's findings on this issue is **DENIED**.

Next, Plaintiff objects to the Magistrate Judge's discrediting of LaVon and Wendell Harris's testimony insofar as it addressed Decedent's alleged distrust of Mavis Harris.  (ECF No. 114, 6.)  Plaintiff believes that it is inconsistent for the Magistrate Judge to rely on LaVon and Wendell Harris's testimony in certain respects while discrediting it in others.  (*Id.*)  However, Wendell Harris's deposition testimony indicated a lack of knowledge regarding whether Decedent

ever refused permission for Mavis Harris to sign documents.  (*See* ECF No. 67-3, 3; Wendell Harris Dep., 154:6–154:11.)  Plaintiff's objection on this point also does not legitimately counter the Magistrate Judge's conclusion that LaVon Harris lacked personal knowledge of the arbitration agreement's execution.  (*See* ECF No. 113, 13–14.)  On the other hand, as indicated in the Amended Report and Recommendation, their deposition testimony indicated more personal familiarity with Decedent's interaction and competency; therefore, the Court, reviewing *de novo*, sees no error in the Magistrate Judge giving more weight to certain aspects of testimony than others.

Plaintiff further objects to the Magistrate Judge's finding that Plaintiff waived his mental capacity argument by failing to seriously develop it past a skeletal phase.  (ECF No. 114, 6–7.)  Upon *de novo* review, the Court concludes that the Magistrate Judge did not err in its finding on this point.  Plaintiff's Response to Defendant Midtown's Motion makes vague allusions to Decedent's alleged incompetency but fails to fully articulate an argument therein.  (*See* ECF No. 67.)  Plaintiff's objection on this point is **DENIED**.

Finally, Plaintiff requests that this Court "allow submission of additional evidence of the issue of Mr. Harris' lack of competency[.]"  (ECF No. 114, 7.)  The Court declines Plaintiff's request.  Following the Magistrate Judge's issuance of the initial Report and Recommendation on Defendant Midtown's Motion to Compel, Plaintiff and Defendants submitted a Joint Objection to the initial Report and Recommendation on December 28, 2020.  (ECF No. 91.)  That Joint Objection stated, in relevant part, that "the parties have completed all discovery related to the Renewed Motion to Compel Arbitration" and "the issue has been fully briefed and is ready for consideration."  (*Id.* at 1.)  In light of this previous representation and the Court's below finding

6

that Mavis Harris lacked authority to execute the agreement, Plaintiff's request to submit additional evidence on this issue is not well-taken.

## II. Authority to Execute Arbitration Agreement

Plaintiff objects to the Magistrate Judge's conclusion that Mavis Harris possessed authority to execute the arbitration agreement. (ECF No. 114, 2.) The Magistrate Judge specifically found that Mavis Harris's representation in the arbitration agreement that she had authority to execute the agreement on Decedent's behalf was sufficient proof. (ECF No. 113, 13.) On the arbitration agreement, under the heading "I have legal authority to sign this agreement," Mavis Harris initialed the line next to the statement "[t]he Resident, while able, gave me oral authority to make decisions for him/her[.]" (ECF No. 63-2, 4.)

Plaintiff argues that there is no evidence "of any act by Mr. Harris that creates authority for Mavis Harris to waive his rights other than the statement in the Defendants' form Arbitration Agreement[.]" (ECF No. 114, 3.) Plaintiff challenges the Magistrate Judge's application of *Watson v. Quince Nursing & Rehabilitation Center, LLC*, No. W2019-00261-COA-R3-CV, 2019 WL 6877897 (Tenn. Ct. App. Dec. 17, 2019) and *Necessary v. Life Care Centers of America, Inc.*, No. E2006-00453-COA-R3-CV, 2007 WL 3446636 (Tenn. Ct. App. Nov. 16, 2007). Plaintiff also cites *John J. Heirigs Construction Co. v. Exide*, 709 S.W.2d 604, 608 (Tenn. Ct. App. 1986), wherein the Tennessee Court of Appeals held that "[a]gency must be proved by the party asserting it, and may not be proved solely by the statements of the agent." The Magistrate Judge, however, found the reasoning of *Necessary* and *Watson* applicable and concluded that there was sufficient evidence of Mavis Harris' authority to sign the arbitration agreement. For the reasons provided herein, Plaintiff's objection on this point is **SUSTAINED**.

The Magistrate Judge found that, pursuant to the holdings in *Necessary* and *Watson*, Mavis Harris's representation through her initialing on the arbitration agreement was alone sufficient to support a finding of express actual authority. (ECF No. 113, 12–13.) In *Necessary*, plaintiff, who was decedent's wife, signed the arbitration agreement as part of nursing home admission documents for her husband. 2007 WL 3446636, at *2–3. In the litigation that followed, plaintiff filed an affidavit stating she had her husband's authority to sign admission documents.[4] *Id.* This was the only evidence showing that the plaintiff possessed express authority. However, although plaintiff argued she had authority to sign admission documents, she nevertheless contended that she lacked authority to waive the decedent's right to a jury trial or agree to arbitration. *Id.* at *3. Thus, the plaintiff did not argue that there was a complete lack of authority, but instead argued that agreeing to arbitration was outside the scope of the authority that she possessed. Ultimately, the court held otherwise, finding that the plaintiff possessed express authority to sign admission documents and the arbitration agreement. *Id.* at *5.

In *Watson*, the decedent's son signed an arbitration agreement as part of admission paperwork. Plaintiff—the decedent's daughter—argued that the son lacked authority to sign the agreement. 2019 WL 6877897, at *1. Not surprisingly, defendant argued that the son possessed authority—specifically that "the language of the arbitration agreement itself was sufficient to grant . . . authority." *Id.* The decedent's son gave deposition testimony that his mother "gave him 'permission to sign everything on her behalf.'" *Id.* The trial court found that neither the agreement's language nor the deposition testimony established authority, and consequently, decedent's son lacked authority to sign the arbitration agreement. *Id.* Later, plaintiff conceded on

---

[4] The Report and Recommendation describes the affidavit and its contents as deposition testimony. (ECF No. 113, 12.)

appeal that the decedent's son had express authority to sign admission documents, but maintained that the decedent's son lacked authority to sign the arbitration agreement, reasoning it was not necessary for admission. *Id.* at *4. Relying on *Necessary*, the *Watson* court reversed the trial court and rejected the argument that the decedent's son possessed authority to sign admission paperwork but not an arbitration agreement. *Id.* at *4–5. Though the Tennessee Court of Appeals reversed the trial court, it did not address whether the language in the agreement was itself sufficient to show authority. Ultimately, as was the case in *Necessary*, plaintiff conceded the alleged agent had some authority to execute documents and agreements on behalf of the alleged principal.

It appears to the Court that the sole evidence supporting a finding that Mavis Harris possessed express actual authority—or any authority as an agent—is the placement of her initials on the arbitration agreement. Under the heading "I have legal authority to sign this agreement," Mavis Harris initialed the line next to the statement "[t]he Resident, while able, gave me oral authority to make decisions for him/her[.]" (ECF No. 63-2, 4.) Even considering *Necessary* and *Watson*, the Court finds that this fact alone is insufficient to establish express actual authority. In *Robinson v. SSC Newport Operating Co., LLC*, 2:10-CV-00265, 2011 WL 4431103 (E.D. Tenn. Sept. 22, 2011), the district court reached a similar conclusion. The arbitration agreement in that case was signed by the decedent's spouse under preprinted language stating: "If competent resident is unable to physically execute the Agreement and authorizes a representative to sign Agreement on the residence's [sic] behalf, sign here." *Robinson*, 2011 WL 4431103, at *3. The district court stated that this preprinted language was the "only evidence arguably pointed to by [the defendant] of express authority." *Id.* The court held that "[s]uch evidence alone does not, however, in this Court's view, establish by a preponderance that express authority existed." *Id.* The court also declined to apply *Necessary*, holding that it was "clearly distinguishable" because

9

"[h]ere, the plaintiff does not acknowledge that she had the express oral authority of her husband to sign any of the admission documents, including the arbitration agreement and [the defendant] points to no evidence" establishing authority.[5]  *Id.*  This Court agrees with *Robinson*'s reasoning.

Like Plaintiff in this case, the plaintiffs in *Necessary* and *Watson* argued that the purported agents lacked authority to sign arbitration agreements.  However, unlike the plaintiffs in *Necessary* and *Watson*, Plaintiff in this case has not conceded authority to any extent.  (*See* ECF No. 67, 12–14.)  In other words, the parties in *Necessary* and *Watson* agreed or conceded that express actual authority existed for some documents, but not for arbitration agreements.  This undermines the significance of a finding of express actual authority from an agent's affidavit or deposition testimony alone.  This was the basis upon which *Robinson* distinguished *Necessary*.  *See Robinson*, 2011 WL 4431103, at *3.  This Court similarly finds *Necessary* and *Watson* distinguishable.  The fact that the plaintiffs in those cases conceded some extent of express actual authority sets those cases apart from the case at hand.  Here, Plaintiff, in no uncertain terms, argues that Mavis Harris lacked any authority whatsoever.

The Court notes that Defendant Midtown's Reply in Support of the Renewed Motion to Compel states that Jonathan Smith, the nursing home's Admissions Coordinator, "testified that the documents in this case clearly demonstrate that he had a direct conversation with Mavis Harris, explained the Agreement to her in detail, and that Ms. Harris expressly confirmed that she had the authority to sign based on permission given to her by [Decedent][.]"  (ECF No. 68, 2.)  Smith testified during his deposition that Mavis Harris's initials next to the bullet point stating "I have handled the Resident's legal and business affairs for 5 (years/months)" indicated that he had

---

[5] This Court notes that the district court in *Robinson* denied without prejudice the defendant's motion to refer the case to arbitration so as to allow discovery on the issue.  2011 WL 4431103, at *4.  This does not result in *Robinson*'s inapplicability, however, as discovery in this case has been completed and yet there is still no evidence of Mavis Harris's authority aside from her representation on the Arbitration Agreement.

10

spoken to Mavis Harris. (ECF No. 68-2, 6; Smith Dep., 50:25–51:14.) However, Smith also testified that he did not remember meeting with Decedent or Mavis Harris upon Decedent's admission to the nursing home. (ECF No. 67-1, 9; Smith Dep. 33:1–33:25.) Rather, Smith's testimony regarding his interaction with Mavis Harris was based on the admission forms. (*See* ECF Nos. 67-1 & 68-2.) Moreover, as explained below, any statement made by Mavis Harris to Jonathan Smith or to anyone else at the time of signing the agreement regarding conversations she had with Decedent would be insufficient to establish an agency relationship.

In *John J. Heirigs*, the Tennessee Court of Appeals rejected a finding of agency based solely on a company's statements made in a purchase agreement sent to the plaintiff that the company was acting as the agent of the defendant. 709 S.W.2d at 607–08. Since the sole proof of agency was a representation in an agreement, much like the present case, the Court views *John J. Heirigs* as factually analogous. Additionally, and while the Magistrate Judge concluded otherwise (ECF No. 113, 12), the holding in *John J. Heirigs* does not appear to be limited to apparent authority, as that case does not differentiate between the different forms of agency authority, but rather, refers to agency generally. *See* 709 S.W.2d at 608; *see also Haury & Smith Realty Co. v. Piccadilly Partners I*, 802 S.W.2d 612, 615 (Tenn. Ct. App. 1990) (setting forth no differentiation between actual and apparent authority in stating that "agency may not be proven by the out-of-court, unsworn, statement of the agent"); *Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572, 574 (Tenn. Ct. App. 1979) (stating that "agency may not be proved by the statements of the agent" without distinguishing between actual and apparent authority). Other cases have applied the principle that agency may not be proved solely by the agent's statements in the context of actual authority. *See Manley v. Humboldt Nursing Home, Inc.*, No. W2019-00131-COA-R3-CV, 2020 Tenn. App. LEXIS 418, at *7–9 (Tenn. Ct. App. Sept. 18, 2020) (applying the *John J.*

11

*Heirigs* holding to implied actual authority); *Barclay v. Kindred Healthcare Operating, Inc.*, No. W2008-02828-COA-R3-CV, 2009 Tenn. App. LEXIS 590, at *15 (Tenn. Ct. App. Aug. 26, 2009) (applying *John J. Heirigs* to express actual authority). Thus, it appears to the Court that the sole proof in this case that Mavis Harris was Decedent's agent is her initials placed on the arbitration agreement next to a preprinted statement indicating that Decedent gave her authority orally. (*See* ECF No. 63-2, 4.) Considering the foregoing cases, Mavis Harris' statements regarding express actual authority, standing alone, are legally insufficient to establish agency authority.

For the same reason, there can be no finding of implied actual authority or apparent authority in this case. *See Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 Tenn. App. LEXIS 630, at *23 (Tenn. Ct. App. Oct. 20, 2008) ("[I]t is clear that agency status, via either actual authority or apparent authority, stems from the actions of the *principal*.") (emphasis in original). Further, the viability of nursing home arbitration agreements where the asserted authority is implied actual authority is questionable in Tennessee. *See Farmer v. South Parkway Assocs., L.P.*, No. W2012-02322-COA-R3-CV, 2013 Tenn. App. LEXIS 637, at *18–19 (Tenn. Ct. App. Sept. 25, 2013); *see also Blackmon v. LP Pigeon Forge, LLC*, No. E2010-01539-COA-R3-CV, 2011 Tenn. App. LEXIS 473, at *37 (Tenn. Ct. App. Aug. 25 ) ("An arbitration agreement signed by a family member, even a next of kin, without the express or apparent authority of the nursing home resident, is invalid." (citing *Raiteri v. NHC Healthcare/Knoxville, Inc.*, No. E2003-00068-COA-R9-CV, 2003 Tenn. App. LEXIS 957 (Tenn. Ct. App. Dec. 30, 2003))). Moreover, because apparent authority exists only if the principal has acted to bestow authority upon the agent—evidence of which is not present in this case—there can be no finding of such authority here. *See Barbee*, 2008 Tenn. App. LEXIS 630, at *23.

The Amended Report and Recommendation relies somewhat on the fact that Defendant did not receive the opportunity to depose Mavis Harris. (ECF No. 113, 13.) The Amended Report and Recommendation states that "[t]he only distinction between Mavis' statement and the agents' assertions in *Necessary* and *Watson* is that the latter resulted from deposition testimonies. But that is merely a distinction without a difference, particularly in light of the fact that Midtown was not afforded the opportunity to depose [Decedent's] wife."[6] (ECF No. 113, 13.) It appears to this Court that an agent's self-serving deposition testimony is the type of evidence contemplated as being insufficient to prove an agency relationship. *See John J. Heirigs*, 709 S.W.2d at 608. This Court is not of the view that the absence of deposition testimony from Mavis Harris is in any way dispositive in this matter. Even if Mavis Harris had been deposed and testified that she had express authority from Decedent, it would not change the fact that Plaintiff argues, and this Court finds, her unsupported statements, standing alone, do not convey authority. Of consequence, Defendant Midtown was still afforded the opportunity to depose, notably, Wendell Harris, LaVon Harris, and Jonathan Smith.

Accordingly, because there is insufficient evidence for the Court to find that Mavis Harris acted as Decedent's agent when executing the Arbitration Agreement, Defendant Midtown's Renewed Motion to Compel Arbitration and Stay Lawsuit is **DENIED**.

## CONCLUSION

Upon *de novo* review, the Court **ADOPTS** in part and **REJECTS** in part the Magistrate Judge's Report and Recommendation. Defendant Midtown's Renewed Motion to Compel Arbitration and Stay Lawsuit is **DENIED**.

---

[6] The Court again notes that the statement in *Necessary* came from an affidavit rather than a deposition. 2007 WL 3446636, at *3.

**IT IS SO ORDERED** this 2nd day of June, 2021.

        *s/John T. Fowlkes, Jr.*
        JOHN T. FOWLKES, JR.
        United States District Judge

14